0537 Aldous v. Darwin National Assurance Company. May it please the Court. I'm Bobby Rubartz, and I represent Charla Aldous and her law firm. My goal is to address three key issues in this summary judgment case. First is the question whether the district court properly applied the judicial estoppel doctrine, because that was fundamental in not only the court's granting of summary judgment for money damages against Ms. Aldous, but also denying her claim for money damages against Darwin. Second, the district court's judgment in favor of Darwin for money damages also relied on the court's application of an equitable reimbursement claim, money hadn't received. And I'll show you that the Texas Supreme Court has already wrestled with that very difficult and thorny issue and determined that as a matter of public policy, equitable claims are not allowed in this context. And finally, the district court's summary judgment against Aldous on her claim for money damages was based upon the court's finding that she was seeking to recover something other than all of her defense costs, and then also based upon a specific policy provision which the court interpreted in such a way that it allowed the insurance company to make a coverage determination, and that coverage determination would be incontestable in court. That's not a proper way to read that provision. Your Honors, with respect to judicial estoppel, the district court abused its discretion by making erroneous legal conclusions. In our case, we characterized what the court did with respect to Mr. Lowenson's declarations and Judge O'Connor's judgment, we characterized that as factual findings. But those weren't factual findings. Factual findings are something that you make when you have evidence, sometimes conflicting evidence, you weigh the party's credibilities, and then you make a factual determination. These were legal conclusions. This was a legal analysis of Mr. Lowenson's testimony. It was an interpretation of that testimony. It was an interpretation of a judgment. So what we're looking at is a legal conclusion that the court made in applying judicial estoppel, and it was error. Your Honor, we've demonstrated in our briefs that Mr. Lowenson clearly testified in his supplemental declaration that the $668,000 that he was addressing was for a particular period of time. This underlying dispute was bifurcated by the magistrate. There was going to be a trial on Ms. Aldis' affirmative claims for attorney's fees, and then there was going to be a later trial on Mr. Hill's counterclaims. The way it worked out, though, is that once the first trial was held, the evidence demonstrated that all of Mr. Hill's counterclaims lacked merit, except for the negligence claim. And so that's why the declarations were done as they were. There was a specific time period. It's in the declaration for the first one. And then in the supplemental declaration, there is a specific time period for that as well. And so the district court erred by construing that supplemental declaration as saying that $668,000 was the total defense costs from February 17, 2011 through the end. If we agree with you, what happens with that? I mean, what do you do about the $2,054,000? I mean, do you send it back for the court to determine the proper amount? Yes. If the judicial estoppel determination is overturned, then the judgment, the money judgment against Ms. Aldis would also be overturned. And then if you agree with me on a second point, Ms. Aldis' claim for money damages against Darwin would also be overturned because what the court held in throwing out Ms. Aldis' claim is you are already committed to saying the most Darwin could have ever owed you is $222,000 in defense costs. By your claims, you're alleging that you incurred more defense costs than that, and so I'm not permitting you to do that. So what would happen with respect to Ms. Aldis' claim is it would go back and there would be a fact issue on how much were her defense costs. And her attorney would need to testify and say... Right, there's no way to render. We would have to go back. Correct. You would have to go back on Ms. Aldis' claim. With respect to Darwin's claim, you can render and you should render because the judicial estoppel finding was the only way that summary judgment was entered against her, and then the damage amount was also based on this judicial estoppel finding. So... Well, shouldn't... Well, couldn't... It's possible that... So you're positive that it would come out that it was not more than actually owed? I mean, it has to be rendered against Darwin, or would Darwin also have a chance to say that they made payment in excess of what was actually owed? Would that claim... Does that automatically disappear? Well, no. With respect to the finding of actual damages, yes, that would go away. But then when you look at what claim is there for Darwin to go back to trial with, their claim is for equitable reimbursement. What they're saying is, we think we paid more in defense costs than we should have paid. And what Texas has decided in this issue, in the Franks case in case, what Texas decided is that when there's an insurer-insured relationship, and the insurer is put in a place where it has to make a judgment call on whether there's coverage and how much it should pay as a settlement, how much it should pay in defense costs when there are issues of coverage. What the Texas Supreme Court has said is the insured is stuck with its decision. Even if it pays a $7 million settlement that later it turns out it wasn't covered, the insurance company can't get reimbursement from its insured. And the reason the court made that decision was just a matter of public policy. The court decided, we don't want in this insurance-insured relationship there to be the situation where there's always the question. The insurance company might come back and sue the insured when it's over. There's going to be fights over whether it should have been paid or not. We're going to leave that risk with the insurer. And it's something the Supreme Court struggled with mightily. I mean, they'd made that decision in the Matagorda County case in 2000. It came up again in 2006, and the first time in Franks casing, the court went the other way and found that there would be a right under certain reimbursement claim against its insured. But then it changed its mind, and it rewrote. It wrote the decision and said, we're going to uphold Matagorda County. And the reason we're going to do that is because public policy. If an insurance company wants this right for equitable reimbursement, it can write it into the policy. And that's what some insurance companies have done. Insurance companies that are selling policies in Texas have done that. They're saying, we can get subrogation against any recovery that you get insured. We can sue you and get that money back. Some insurance companies even set it out, we get all our money back first, and then only after the third element do you get money. So that's something that insurance companies have done in response to what the Texas Supreme Court has said in Franks casing. Franks casing was in 2008. This policy was written in, or was written in. Darwin could have written into the policy the right to come back and sue and solve this later for contractual reimbursement if they wanted to, but they didn't. And so that's why it's a reverse and render against Darwin, because Darwin's claim is not cognizable under Texas law. With respect to the judicial estoppel issue, in our briefs, we laid out the chronology, and I won't go back into that. I'll let that stand as it is. But the big picture shows that judicial estoppel was inappropriate here, because if there really had been somebody trying to take advantage of the court and play fast and loose with the court, what would have happened would have been Mr. Lowensohn would have said in his first declaration where he was talking about $2 million, knowing that you can't recover defense costs in Texas unless they're inextricably intertwined with pursuing your affirmative claims. If we were trying, if Ms. Wallace was trying to pull a fast one on the court, Mr. Lowensohn would have said in his first declaration that was all related to affirmative fees. We didn't know. It was just an affirmative, that was the first part of the trial, everything related to affirmative fees. There were no defense costs in there, but he didn't do that. Mr. Lowensohn testified candidly, I could allocate all of this work to either affirmative fees or defense costs or both. And so Mr. Lowensohn didn't even do the first part. So if Ms. Wallace was trying to pay fast and loose, that first declaration would have said it's all affirmative fees, and Ms. Wallace would be coming back now in this case and saying, oh, no, no, some of that was defense costs that Darwin should have paid. And that didn't happen. That's not the case that you have here. And so judicial estoppel was inappropriate. With respect, finally, to Ms. Aldis' claim, the two issues where the district court erred, first the district court understood Ms. Aldis to be saying that Darwin should have to pay for her pursuing her claim. And that's incorrect. That's not what Ms. Aldis was seeking to do. What Ms. Aldis was seeking to do in the trial court is to recover from Darwin a complete defense. And that's the way the law is in Texas. If there's one claim that's potentially covered, the insurance company has to pay for an entire defense. And so what Ms. Aldis is saying is that we need to have a trial on whether what I'm saying actually was defense costs, and a jury needs to say yes or no, that's the amount of costs. And she's not seeking to recover anything solely related to her affirmative claims. She just wants to be paid for those discrete activities that were required to defend her. Can I ask about the Vail case, the Parkins and all of that? Sure. You know, in the Deepwater Horizon case, we certified the question and then the case settled before we got the answer just in the past year. But you don't really argue for us to certify, but you know we can't overrule Parkins. So talk to us about that. Yes, ma'am. I will. I understand you can't overrule Parkins, but we did ask you alternatively to certify the question. Are you seriously wanting us to certify the question? It seemed kind of a... We just did it, so obviously there is some precedent for us doing that, but is that something you... And in the last case, though, the lawyers who were the authors of the treatises, you know, came and argued that this was important to get this settled, and this doesn't seem to be Are you seeking that or not? Would you please? What's in my brief is based on page limitations. I feel very strongly that this issue needs to be addressed. Right now you have two different laws being applied in state court and federal court. Is it really true because Parkins is being followed pretty regularly in state court now? No, ma'am. It's not? It's not. Some courts have. Some are. There was a Houston, the 14th court, I think it was the 14th, it may have been the first, just a year or so ago, rejected the Parkins analysis completely. And so it's unsettled. There's a perceived difference between state and federal court. There are people, there's all kinds of litigation going on now, remanding because someone's fraudulently joined a state actor. There's tons of litigation over that because people perceive a difference of the law in federal and state court. It shouldn't be that way. It shouldn't be where some people are allegedly forum shopping to stay in state court. The law should be the law and it should be the law as applied by the Texas Supreme Court where Texas decisions are at issue. And so absolutely am earnestly serious about this issue. It's an important issue because if you can't get the penalties of the insurance code without having some independent damage, you've basically neutered what the insurance code appears to have been designed to be, to provide an incentive for the insurance company to pay claims promptly instead of holding back. And if they hold back and if all they have to do in the end is pay what they owed, the legislature back in the 70s thought that that was not sufficient. Thank you. Good morning, Your Honors. My name is Tom Spitaletto. I represent the Appalachian Cross Appellant Darwin National Assurance Company. I wasn't going to do this, but let me start at the end since you just asked about the independent injury requirement and whether or not the appellants are asking genuinely whether that be certified at the Supreme Court. I do think it's an afterthought, but whether it is or not, I'd submit, first of all, the question is answered by Parkins and Castaneda. We've got cases cited in our brief about how that's being consistently applied. I know the court had concern about that in Deepwater Horizon. But the real reason why this case is not appropriate for certification is because the question of independent injury is, was there an injury independent of a wrongful denial of benefits? And as the district court properly found, there hasn't been a wrongful denial of benefits in this case. So that's the beginning point. There hasn't been any denial of benefits. Darwin, in fact, overpaid what was owed. So this is not the proper court. to certify whether there's an independent injury. But let me jump back and start at the beginning. The briefs address a lot of legal theories and technical requirements about judicial estoppel and segregation. And I think they all center around these basic principles of insurance law that insurers have to have an actual loss. They have to not benefit from not being put in a better position than they otherwise were by insurance and to prevent a double recovery. That's what this case is really about. Aldis sued her former client for not paying, and they won. They recovered a $20-something million award. The fee lawsuit against her former client drew counterclaims, as they often do. Darwin stepped up and paid half a million dollars in defending that case. And Ms. Aldis and her co-counsel were also awarded all of the fees to prosecute and defend the case against her former client, over $2.5 million. So the district court... Yes, ma'am. If Aldis were not judicially estopped from claiming the defense costs in excess of the $668,000, do you concede that Darwin cannot seek equitable reimbursement and also that the district court erred by dismissing the breach of contract claims? No, Your Honor, I don't concede that. Which one of those do you want me to address first? Pick. What's the most important one for you? The judicial estoppel is really the linchpin to the appellant's arguments. If their alternative reading of the $668,000 in defense costs is not accepted by this court, as it was not accepted below, then all of their arguments largely fall apart. Let me highlight what the court already knows, that unlike the de novo standard that's cited in the appellant's primary brief for the review of summary judgment rulings, the use of judicial estoppel is reviewed by an abuse of discretion standard, which means that there have got to be clearly erroneous conclusions of law, clearly erroneous factual findings. So just going through the evidence that is well cited in the briefs, Mr. Lowenson testified there's no dispute that Darwin paid $502,000 in the defense of the case. To prove up the fees, Aldis' former lawyer submitted multiple declarations. I'm reading from record 1424. Mr. Lowenson said an attorney's fee, including expenses of $2,054,000, was a reasonable and necessary fee for the prosecution of claims. An attorney's fee, including expenses of $668,000 and some change, was reasonable and necessary for the defense of the counterclaims. They're not qualified or limited in time or any other indication that they're not the total. As Mr. Rubart said, the appellants point to date limitations that were in prior declarations, and they argue that this $668,000 number doesn't reflect the total amount that's incurred for the defense. But here's the problem with that, and I think this was part of what Your Honor was asking about the reverse and render. There's no other evidence of defense costs apart from the $668,000. The appellants are recasting Lowenson's testimony, and they want the court to read an isolated statement in an earlier declaration that says the fees can be allocated to either the prosecution or the defense or both. That's a standalone statement at the back of the affidavit, but that's not what Mr. Lowenson does. In that same affidavit, Mr. Lowenson segregates $2,054,000 to the prosecution of this case. It says prosecution of the case throughout the entire declaration. The next supplemental declaration segregated $668,000 for the defense, and then the third declaration further broke out another $135,000 for the defense of just the professional negligence claims. Nowhere in the record does it say anything other than $668,000 was reasonable and necessary for the defense. Appellants point to the date limitations, but if there's no other evidence of the amounts, the dates are really irrelevant. That's the only evidence there is in the record of what was for the defense and what was for the prosecution. I think the only result is to find that the court was not clearly erroneous, and it's a simple matter. Aldis's own attorney segregated the fees, and that supports the district court's ruling. This is the exact circumstance that judicial estoppel calls for. They took a position in the prior pleading, and now they're asking the court to sort of recast the evidence for purposes of how it impacts coverage, but it already resulted in a judgment against their former client and awarded amounts that Aldis has already recovered. This is troublesome, though, because there's a difference between saying, well, they didn't argue the alternative and saying that you're judicially stopped from arguing anything else because you've made a declaration to the court that it's only such and such. Where in the record did Aldis claim that the 668 is the total cost, such that you couldn't take a different position or argue additional? There's a difference between saying there's not evidence of something and you were stopped to argue. And so you need, for you to win on the estoppel, some actual statement in the record that that's it. Yes, ma'am. It does not say, there's no way that Aldis says this is the total, but that's the only number that Aldis put forward. But then why is estoppel appropriate if it's just evidence? What makes it estoppel, Your Honor, is that Judge Tolliver took that evidence and read that evidence to mean Mr. Lowenson states that BAM has incurred X amount of attorney's fees, X amount of expenses for a total of $668,000 in defending against Hill III's counterclaims. There's no date limitations. It's incorporated into her findings of fact without qualification as the total. I mean, the court said, attorneys, you get all of your fees for the prosecution of your affirmative claims. You get all of your fees for the defense of the counterclaims. And the evidence that they submitted is Lowenson's declarations. The court accepted that evidence, incorporated it exactly into their findings of fact, and then applied that number in the judgment in the award that was given, was awarded and collected already in the underlying lawsuit. That's why they're judicially estoppel, because it actually manifested in an award that they've already received. Separately, Your Honor, separate and apart from the equitable theories that we've been talking about, the overpayment theories, Your Honor asked if the equitable theory is overturned. I'd like to address what is Darwin's crossing deal. And that is that the policy actually supports an award of all of the amounts that Darwin paid for the defense, because Aldous was awarded all of those amounts. The policy provides that Darwin has the right to recover against third parties and that those rights are assigned to Aldous. It's a standard segregation provision. It's in most policies. It's cited in many places throughout the brief. I'm reading from record page 961. The segregation provision says the insurer shall be segregated to all of the insurer's rights of recovery against any person or organization. The insurer, like Ms. Aldous, should assist the insurer in effecting those rights, shall cooperate with the insurer and do nothing to prejudice those rights or terminate them in any way. Based on this provision, Darwin is actually entitled to recover back the entire amount that it paid as a matter of contract, separate and apart from a money-hadn't-received theory. I mean, Ms. Aldous acknowledged in her deposition that she was paid twice for the same fees. It's record 1454. It's fundamental insurance law that Darwin was segregated to Aldous' rights. The Dickey v. Healthcare case is discussed extensively in the brief. Any funds recovered by an insured belong to the insurer to the extent of their payment. Aldous failing to turn over that money constitutes a breach of contract. Mr. Rubarts addressed the Franks-Casing case in an attempt to defeat the equitable theory, but Franks-Casing simply doesn't apply. Franks-Casing dealt with potential reimbursement of fees paid by an insurer that are later determined not to be covered. So a claim comes in, it's submitted to the insurer, the insurer defends the insured pursuant to a reservation of rights. There's some coverage issue that they reserve. The carrier pays all of the fees. At some point later, it's determined judicially that coverage never in fact existed. And so Franks-Casing addresses, does an insurance carrier have an applied right to be reimbursed for those dollar amounts? Because it was later determined that it was not covered and the policy rationale that Mr. Rubarts discussed are the insurer should be the one that takes that risk. That's not what's going on in this case. There's no implied right of reimbursement for the defense costs. The district court found that Darwin paid more than its share. And as a result of that overpayment, Aldous held money that rightfully belongs to Darwin. There's nothing in the Franks-Casing case that prohibits a district court from awarding Aldous its contractual rights. And, I mean, even if Franks-Casing did apply and it said that something had to be in writing, again, that's what gets back to this central insurance principle. There's a segregation provision. There is a provision in the contract that gives Darwin the right to be reimbursed because they own that recovery against the third person. So we submit that the Franks-Casing case doesn't apply at all. There is an argument by the appellants in the brief that hasn't been discussed too much today, but it's relevant to part of what's been discussed, and that is that the appellants argue that Darwin has to pay for fees for the prosecution and the defense because they're inextricably intertwined. The appellants basically want to profit from the fact that their fee claim against their former client drew counterclaims for malpractice, which they often do. The underlying dispute began with Aldous and her co-counsel suing their former client. Their former client counterclaimed for professional negligence and the malpractice claims against them, and Aldous is now asserting that because of those counterclaims, all of the fees, even for the two months before the counterclaim was filed, are now transformed into defense costs because they're all inextricably intertwined and they can't be segregated. The problems with that argument are, first of all, it's a red herring because their attorney has segregated the fees. He has attributed $2 million to the prosecution, $668,000 to defense, so even if those cases apply, which they don't,  the attorney has unintertwined, untangled the fees, and that's what the district court's ruling was based on, and Darwin submits that that was not clearly erroneous. But this duty to defend the whole concept that appellants counsel described, nothing about Texas law says that if you have a duty to defend one part of a case, you also have a duty to pay for the prosecution of affirmative claims. That's what their argument is submitting, and Texas law doesn't say that at all. Okay, can you get back? I asked you a multi-part question at the beginning, and you answered one of the parts. So assuming, Arguendo, that you were not to prevail in your judicial estoppel claim, what goes back and what happens to each part of the case? And I'm not foreshadowing, I'm just trying to figure it out. Your Honor, I was trying to answer that by saying that separate and apart from the equitable fee, we also have a contractual right. So what should go back? What should be affirmed? What should go back? What gets in the weeds? Where do we need actual numbers and where do we not? Nothing should go back. I mean, the evidence in the record. No, the evidence in the record. I mean, I'm not. There is nothing that can go back. The only evidence in the record already segregates the fees. And so that's the basis for the court's money-had-and-received finding, and it's also a basis for the court to award fees pursuant to the contract for segregation. I feel like I'm not directly answering your question. I'm not trying to do that, Judge. Is there some other way that I could answer that question? Okay, so it's your position that they don't get to argue that the other amount of money is part of this, even though they had originally said that in their affidavit, in their statement or declaration or whatever it's called? It's our position that they're judicially stopped. Right, but if they're not, why don't they get to go back and litigate the right number? I guess we would have to do that. Okay, and is there anything else that has to be litigated as a result of having to litigate that? I mean, I asked Mr. Lowenson in his deposition whether he could divide up how he went about dividing up what he divided up, and he said he didn't recall how to do that. So I don't know how we would go back and relitigate that, but yes, Your Honor, I maintain that that's the very purpose of judicial estoppel is to prevent that. Right, but I'm trying to figure out, are there any other repercussions to the other claims as a result of that if that were to occur? Don't fight the hypo. I understand you strongly disagree that it's judicially estopped. I mean, you believe it is. They would have to somehow prove what they incurred for the defense and the fees. Yes, they would. And that that was not more than the half a million dollars that DARPA was already paying. Although part of the answer to that question is that none of that matters because they've recovered all of that back, and so that's what goes to the rest of the argument that I was describing in that it still doesn't have to be remanded because it's a moot issue in the sense that they've recovered it all back and that Darwin has the right to those fees under the subrogation clause. Okay. Thank you. Is there anything else you want to address? No, Your Honor. Okay, thank you, Counsel. We have your argument. You've saved time for rebuttal, Counsel. I did, Your Honor. With respect to where he ended, that Ms. Aldous has already recovered everything back that Darwin paid, that's just not true. The summary judgment evidence shows that there's $211,000 that was paid after Mr. Lowensohn's declaration. Mr. Lowensohn's declarations are the only truth. I guess where I am is that's only true if you accept the judicial estoppel argument. I mean, if you accept that judicial estoppel applies, then they've recovered everything. If you don't accept that, then they haven't recovered it. Exactly, exactly. And judicial estoppel should be cautiously applied. It shouldn't be implied. It should be carefully applied. And here, Judge O'Connor, who entered the final judgment, you have to have the acceptance prong as well, Judge O'Connor said he's awarding $2.5 million in defending the case. On its face, there's no $668,000 in defense. You have to take, as a matter of legal construction, you need to look at Judge O'Connor's judgment. And it makes sense when you look at the entire evidence of everything that happened, the way it was bifurcated. Mr. Lowensohn's second supplemental declaration where they say he divides up, he says, I incorporate my prior declaration by reference, when he talks about $668,000, which has those time limitations. And if you look at the next paragraph, he says four different times that that $668,000 related to that May 1st through June 24th time frame. I mean, it's there. It's in the evidence. And so judicial estoppel won't be there. The subrogation provision, Your Honors, in this case, the subrogation provision that Darwin seeks to rely on says the insurer shall not exercise any such rights against the insured except provided herein. And then it gives the example of when you can sue your insurer. So they've carved out an exception to the anti-subrogation rule, but it doesn't apply here. Finally, Your Honor, the situation that we're in is that Darwin had an opportunity. I mean, these parties, they talk. The summary judgment record shows that Ms. Aldis offered and said, if you will pay all these defense costs from this point forward, if we make a recovery, I'll pay you back in the same proportion that you put money in. Darwin rejected that. They could have written that into their policy. They didn't. They had an opportunity because Ms. Aldis offered it to them, but they rejected that. And so instead, they chose to use their own counsel and decide what they should pay and what they shouldn't pay. And then they made a decision, we're not going to pay fees if we think it's to pursue your affirmative claim. Of course, pursuing the affirmative claim is the only way you could get any of the fees back in the first place. And so what Darwin did as an insurer, hedging its bets, decided we're not going to pay for those affirmative claims. You're probably not going to recover it anyway. It's probably what they thought. But then Ms. Aldis went out and she made a recovery. And so now, having been in the position where they had an opportunity to make a deal with her, they had an opportunity to pay for the affirmative claims to make a recovery. They chose not to do that, and yet they want their money back. And that's not right. This case needs to be remanded. Ms. Aldis needs to be given her day in court. Thank you. Thank you. This concludes the arguments for today. We will stand in recess until 9 o'clock tomorrow morning. Thank you very much.